**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
JOHN SHARP, MORGAN SHARP, 217 MAIN
STREET, LLC, and WKMF, INC.,

                                Plaintiffs,

                                                        **REPORT AND**
                                                        **RECOMMENDATION**

            -against -
                                                        CV 16-2994 (JFB) (AKT)

INCORPORATED VILLAGE OF FARMINGDALE,
FORMER FARMINGDALE VILLAGE MAYOR
GEORGE STARKIE, ROBERT PETERSON and
FARMINGDALE VILLAGE CLERK BRIAN HARTY,

                                Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      **PRELIMINARY STATEMENT**

        This action arises from a discriminatory scheme allegedly perpetrated by the Defendants

against individual *pro se* Plaintiffs John Sharp and Morgan Sharp, and corporate Plaintiffs 217

Main Street, LLC and WKMF, Inc. (collectively, "Plaintiffs").  According to the Complaint,

Defendants engaged in various tactics designed to unnecessarily complicate and delay the

process by which Plaintiffs obtained a building permit to renovate a commercial building in

Farmingdale, New York.  *See generally* Amended Complaint ("Am. Compl.") [DE 9].  Both sets

of Defendants have filed motions to dismiss the Amended Complaint for a variety of reasons.

S*ee* DE 15, 17.  Judge Bianco has referred the motions to this Court for a Report and

Recommendation as to whether the motions should be granted or denied.  *See* DE 21.

        The Court has reviewed the parties' submissions and the applicable case law and

respectfully recommends to Judge Bianco that both motions be GRANTED, in part, and

DENIED, in part.  The Court recommends that the motions be granted to the extent that they

seek dismissal of claims asserted on behalf of the individual *pro se* Plaintiffs John and Morgan

Sharp.  However, the Court further recommends that the motions be denied as to the corporate

Plaintiffs.  As will be discussed in greater detail below, the corporate Plaintiffs must be

represented by duly licensed counsel and the Court therefore recommends to Judge Bianco that

they be given 30 days to retain counsel.  Should the corporate Plaintiffs fail to do so within 30

days, then the Court recommends that the Amended Complaint be dismissed in its entirety.

## II.    **BACKGROUND**

### A.    **Factual Background**

The following facts are taken from the *pro se* Plaintiffs' Amended Complaint.  All facts

alleged by Plaintiffs are assumed to be true for purposes of deciding a motion to dismiss and are

construed in a light most favorable to Plaintiffs as the non-moving parties.  *See, e.g.*, *LaFaro v.*

*N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F.

Supp. 2d 418, 425 (E.D.N.Y. 2012).

On August 5, 2016, Plaintiffs' filed their Amended Complaint against the "Incorporated

Village of Farmingdale, Former Farmingdale Village Mayor George Starkie, Robert Peterson,

and Farmingdale Village Clerk Brian Harty."  *See generally* Am. Compl.  According to the

Amended Complaint, Plaintiff John Sharp is a principal of corporate Plaintiff "Main 217, LLC,"

and Plaintiff Morgan Sharp is a principal of Plaintiff "WKMF, Inc."  Am. Compl., I.A. ¶¶ 1-2.

Both entities were incorporated in New York and have a principal place of business in

Farmingdale, New York.  *Id.*, ¶¶ 2-4.  *Id.*

The 55-page Amended Complaint is divided into seven claims for relief, the first one

being the lengthiest.  *See generally id*.  The Court summarizes each claim in turn below.  In

conjunction with the "First Claim for Relief," Plaintiffs aver that for the period beginning March

2010 and continuing through August 2013, Defendants "violated plaintiffs rights under the First, Fifth and Fourteenth Amendments to the United States Constitution." *Id.*, IV. ¶ 1. Plaintiffs further allege that multiple events "including violations of New York State law, Nassau County law and Incorporated Village of Farmingdale law, when taken together, give evidence that defendants discriminated against plaintiffs, by treating them differently than similarly situated comparators." *Id.* ¶ 1.

According to Plaintiffs, Defendants Mayor Starkie and Village Clerk Harty "entered into two successive, one year, contracts with CGA Consulting, Inc. (CGA), a private contractor, to engage in building department activities for Farmingdale Village." *Id.* ¶ 12. Plaintiffs further claim that Defendant Peterson was a principal of CGA and that he wrongfully "perform[ed] duties in the Building Department, which by law are reserved for municipal employees and/or officials of the municipality." *Id.* ¶¶ 13-14. Plaintiffs allege that Peterson conducted "inspections" and "issued orders" illegally and "with impunity." *Id.* ¶ 21.

Plaintiffs maintain that in or around January 2010, Plaintiff John Sharp purchased real property, namely, a two-story building with a basement, located at 217 Main Street, Farmingdale, New York. *Id.* ¶ 22. The building contained a bar/restaurant on the first floor and basement. *Id.* ¶ 25. Plaintiffs sought to renovate the existing building so that a new bar/restaurant could occupy the same space where the former bar had been. *Id.* ¶ 23. Plaintiffs planned an opening of the renovated property no later than April 15, 2010. *Id.* ¶ 25. To that end, "in the first week of March 2010," Plaintiffs state that they "submitted a completed building permit application, along with a full set of plans, and other documents required to complete the application." *Id.* ¶ 26. According to the pleadings, after waiting three weeks for a response, Plaintiff John Sharp approached Defendant Mayor Starkie to follow up on the status of the

application.  *Id.* ¶ 27.  The Mayor referred to Plaintiff Sharp "in a condescending tone," as "one of those cops from Troop 601."  *Id.* ¶ 28.  Plaintiff states that he is, in fact, a retired Nassau County Police Officer and is the Assistant Scoutmaster of Farmingdale Troop 601, Boy Scouts of America.  *Id.*

The Amended Complaint asserts that Defendant Peterson, at a meeting he conducted on March 30, 2010, proclaimed that the building plans were "deficient, formulated in error, not in compliance with the Uniform Code and therefore would not be approved."  *Id.* ¶¶ 33, 34.  According to Plaintiffs, this determination did not comport with "the requirements of New York State Uniform Codes, local Nassau County Laws, and National Electrical Codes, as applicable to an 'existing' building, and, to the proposed continued commercial use of the premises."  *See id.*, ¶ 35.  Peterson subsequently sent Plaintiffs a letter on April 2, 2010, informing them of another demand regarding a reduction in occupancy.  *Id.* ¶ 44.  Plaintiff notified Mayor Starkie that there was no lawful or rational reason for demanding these changes to the plans.  *Id.* ¶ 50.

On or about April 5, 2010, Plaintiffs sent Defendant Peterson a written response to his change orders.  *Id.* ¶ 52.  Defendant Peterson demanded that Plaintiffs make various changes to their plan, including but not limited to making the front entrance handicapped accessible, designating the project as a "Level III Alteration" and installing a drain in the kitchen floor.  *See id.* ¶¶ 54-55, 62.  Plaintiffs further allege "[t]hat on information and belief Peterson had arbitrarily and capriciously reduced the allowed occupancy on this project."  *Id.* ¶ 49.  Peterson stated that he would not issue a permit if Plaintiffs did not change their plans to include these alterations.  *Id.* ¶ 67.  Upon inquiry from Plaintiff Sharp whether Defendant Peterson would issue a permit and do so immediately if Plaintiffs changed the plans and added these items, Peterson

4

responded "Yes."  *Id.* ¶ 75.  On April 14, 2010, Farmingdale Village employee Joanne Edling signed and issued a building permit.  *Id.* ¶ 78.

Plaintiffs contacted the "NYS/DOS/DCEA" and were directed to send a copy of the plans to the agency representative.  *Id.* ¶ 84.  On May 10, 2010, Plaintiffs received an email from NYS/DOS/DCEA employee containing a "Code Interpretation."  *Id.* ¶ 86.  This "code interpretation" resolved all issues in Plaintiffs' favor, including the matter of occupancy.  *Id.* ¶ 87.  When Plaintiffs brought this information to the Mayor, Starkie responded, "Farmingdale enforces the building code in Farmingdale, not Albany" and refused to amend Defendant Peterson's demands.  *Id.* ¶ 90.  The Amended Complaint states that on July 22, 2010, Plaintiffs Morgan Sharp and John Sharp, as well as their attorney, attended a meeting with Defendants, the Village Attorney, and the Village Trustee, at which time they discussed the NYS/DOS/DCEA "Code Interpretation."  *Id.* ¶ 106.  According to Plaintiff, "during [Peterson's] first explanation [he] was found to have deliberately selected the wrong factor from a simple chart in the NYS Uniform Code" resulting in a "reduced occupancy."  *Id.* ¶¶ 110-111.  Plaintiffs allege that other errors were also revealed.  *See id.* ¶¶ 112-14.  Plaintiffs maintain that "there was no lawful or rational basis for Peterson to only miscalculate against plaintiff's interest."  *Id.* ¶ 115.

According to Plaintiffs, Defendant Peterson subsequently "agreed to the requirements of the 'Code Interpretation'" but proceeded to impose additional requirements, including another reduction to the occupancy.  *Id.* ¶¶ 132, 139.  Plaintiffs argue that these requirements also contravened the "NYS Uniform Code."  *Id.* ¶ 133.  They once again involved NYS/DOS/DCEA, which resolved the issues "in favor of plaintiffs."  *Id.* ¶ 146.  Plaintiffs allege that Defendant Mayor Starkie refused to amend his requirements and that Plaintiffs "were forced to acquiesce."  *Id.* ¶ 149.  After further dispute regarding what changes needed to be made to Plaintiffs' plan,

"on October 28, 2010, defendant Farmingdale Village issued a Certificate of Occupancy to plaintiffs signed by Peterson with an occupancy limit of 75 persons," which, Plaintiffs maintain, was below the legal limit. *Id*. ¶ 159. Notwithstanding the purportedly defective certificate of occupancy, Plaintiffs opened for business the very next day. *Id*. ¶ 160.

According to Plaintiffs, on April 4, 2011, a public hearing took place regarding a "proposed outdoor dining ordinance possibly restricting the use of outside areas of commercial properties on Main Street." *Id*. ¶ 172. Plaintiff John Sharp inquired into the manner by which he could receive compensation for the "taking" of part of the use of his property, to which the Village Attorney responded that Mr. Sharp would have to retain counsel. *Id*. ¶ 173.

Plaintiffs allege that on March 20, 2012, Ralph Ekstrand was elected the new Mayor of the Village of Farmingdale. *Id*. ¶ 179. According to Plaintiffs, the newly elected Mayor explained to Plaintiff John Sharp that the prior administration created various problems that he was now required to fix, including the occupancy issue involving Plaintiffs' business. *Id*. ¶ 184. According to Plaintiff Sharp, he learned that in 2009, Mayor Starkie "had specifically targeted a Spanish owned business in Farmingdale Village." *Id*. ¶ 193.

The Amended Complaint further alleges that Plaintiff John Sharp met with the Superintendent of Buildings, an individual named Fellman, in June 2013. *Id*. ¶ 207. According to Plaintiffs, Fellman later increased the occupancy to the number requested by Plaintiffs. *Id*. ¶ 212. Plaintiffs allege that they lost $310,000 due to the unlawful occupancy restrictions imposed by Defendant Peterson. *Id*. ¶ 213.

At the end of July 2013, Plaintiff Sharp discovered that the business owner of a different bar/restaurant in Farmingdale, "underwent a renovation similar in scope, size and complexity as had plaintiff's premises." *Id*. ¶ 214. Both projects occurred near the same time in 2010 and

underwent essentially the same renovations.  *See id*.  Likewise, both premises are situated with "front facing on the street and rear facing on to heavily used municipal parking lot."  *Id*. ¶¶ 214-216.  Yet the other business owner informed John Sharp that he had not obtained a permit prior to undertaking the renovations.  *Id*. ¶ 222.

Plaintiffs allege that at various times throughout 2011, 2012, and 2013, John Sharp submitted FOIL requests to the Village but the requests were not responded to within the statutory time frame.  *Id*. ¶ 164, 178, 200, 224, 227.  Upon Plaintiff Sharp's receipt of certain building permit files obtained through FOIL requests, he discovered that more business owners were spared the complications and unwarranted delays which Plaintiffs were forced to endure.  *Id*. ¶¶ 227, 233-245.  Plaintiffs argue that "defendants treated [them] differently than similarly situated persons and applied unequally, a facially neutral statute, for the purpose discriminating against the plaintiff."  *Id*. ¶¶ 244, 245.  According to Plaintiffs, the delays they experienced cost them more than $1,000,000 in expenses and lost revenue based on Peterson's discriminatory actions. *Id*. ¶¶ 247-255.  They were also forced to hire additional personnel, pay additional fees for architectural services, endure additional manual labor, and incur legal fees.  *Id*. ¶¶ 262-265.  John Sharp was even compelled to enroll in a course of study to become a NYS Certified Code Enforcement official so that he could know Defendants' obligations under state law.  *Id*. ¶¶ 266-268.  In addition, Plaintiffs had to hire extra personnel to strictly monitor the occupancy of their pub to avoid citations from the Village and had to apply for a second building permit to address the unlawful occupancy restriction.  *Id*. ¶¶ 270-271.

Plaintiffs conclude the portion of their Amended Complaint falling under the title "First Claim for Relief" with the following statement:

> defendant Farmingdale Village deprived plaintiffs of the following rights, privileges and immunities secured to them by the

> Constitution and the laws of the United States: the right to speak, to
> petition the government for a redress of grievances under the First
> and 14th Amendments to the U.S. Constitution, and the right to
> receive due process under the laws, rules, regulations, and codes of
> New York State, the County of Nassau and the Incorporated Village
> of Farmingdale under the Fifth and Fourteenth Amendments, and
> the right to equal protection under the laws, rules, regulations, and
> codes of New York State, the County of Nassau and the
> Incorporated Village of Farmingdale under the Fifth and Fourteenth
> Amendments to the U.S. Constitution and the right to not be
> deprived of their property without due process of the law and just
> compensation, under the Fifth and Fourteenth Amendments to the
> U.S. Constitution.

*Id*. ¶ 274.

In their "Second Claim for Relief," Plaintiffs aver that Defendants violated the NYS

FOIL Law by simply not responding to FOIL requests at all or responding well beyond the

timeframe set forth in the law itself. *Id*. ¶ 276. As to the "Third Claim for Relief," Plaintiffs

allege that "defendants violated plaintiff's rights to procedural due process under the law by mis-

reading, mis-construing, and mis-applying the New York State Uniform Building." *Id*. ¶ 278.

In conjunction with their "Fourth Claim for Relief," Plaintiffs state that Defendants

"violated plaintiff's right to substantive due process under the law when they mis-read, Mis-

construed, and mis-applied the New York State Uniform Building Codes and the laws of Nassau

County in a malicious effort to harm plaintiffs, and the current and future value of plaintiff's

businesses and plaintiff's real property." *Id*. ¶ 280. The "Fifth Claim for Relief" asserts a

violation of Plaintiffs' "rights to due process of the administration and enforcement of the NYS

Uniform Building Codes, by performing duties which are reserved for public officials and public

employees." *Id*. ¶ 282. Plaintiffs further allege, in connection with their "Sixth Claim for

Relief," that Defendants "conspired to deprive plaintiffs of their rights to equal protection under

New York State Executive Law, section 370 through 382, and the NYS Uniform Building

Code." *Id*. ¶ 285.  Plaintiffs' seventh and final "Claim for Relief" states that Defendants "failed to provide just compensation for the unlawful taking of plaintiff's allowable occupancy limit, under the NYS Uniform Building Code, resulting in the loss of current and future value of plaintiff's businesses, and the loss of current and future value of plaintiff's real property." *Id*. ¶ 287.

As a result of Defendants' conduct, Plaintiffs argue that they are entitled to compensatory damages in the amount of $1,000,000, punitive damages in the amount of $1,000,000, plus fees, costs and disbursements, and $175 "for unlawfully demanding a fee to fix the unlawful conduct." *Id*., V. ¶ 1.

### B.    Procedural Posture

Plaintiffs filed their original Complaint on June 9, 2016 against the Incorporated Village of Farmingdale.  DE 1.  On July 21, 2016, the Village requested a pre-motion conference in anticipation of filing a motion to dismiss the Complaint.  *See* DE 4.  That same day, Judge Bianco waived his pre-motion conference requirement and set a briefing schedule for the Village's motion.  DE 5.  Consistent with the briefing schedule, the Village filed its motion on July 21, 2016.  *See* DE 6.  Shortly thereafter, Plaintiffs filed an Amended Complaint on August 5, 2016, adding "Former Farmingdale Village Mayor George Starkie," "Robert Peterson," and "Farmingdale Village Clerk Brian Harty" as named Defendants.  *See* DE 9.  In response, on August 15, 2016, counsel for Defendant Peterson filed a letter to Judge Bianco seeking permission to file a Pre-Answer motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). DE 11.  Counsel for the Village requested that they be given two weeks to determine whether they would be representing the newly added Defendants, and also requested that the Court set a briefing schedule for an anticipated motion to dismiss the Amended Complaint.  DE 12.  Judge

Bianco granted counsel's requests, waived the pre-motion conference requirement, and instituted

a briefing schedule.  DE 13.  On August 30, 2016, counsel for the Village informed the Court via

letter that it would be representing the newly added defendants.  DE 14.

### C.    The Instant Motions

Consistent with Judge Bianco's Scheduling Order, the Defendants filed their respective

motions to dismiss[1] on September 15, 2016.  DE 15-20.  Accompanying Defendant Peterson's

motion is a "Notice to Pro Se Litigant who Opposes a Rule 12 Motion Supported by Matters

Outside the Pleadings."  DE 16.  The Rule 12.1 Notice advises Plaintiffs that "the Court may

treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure" and that Plaintiff must therefore "submit evidence, such as witness statements or

documents, countering the facts asserted by the defendant and raising specific facts that support

[his] claim."  *Id*.  Plaintiffs filed a Memorandum in Opposition on October 19, 2016 and the

Defendants filed their respective replies on October 28, 2016 and October 31, 2016.  DE 22-24.

Plaintiffs then proceeded to file a surreply on November 14, 2016.  DE 25.

Judge Bianco referred Defendants' motions to dismiss to this Court for a Report and

Recommendation as to whether they should be granted.  DE 21.  The initial motion to dismiss

filed by the Incorporated Village of Farmingdale on July 21, 2016 was also referred to this Court.

---

[1]    The Court acknowledges that counsel for Defendant Peterson submitted a Memorandum
of Law in Support of his client's motion to dismiss as an exhibit to his Reply Memorandum of
Law filed on October 28, 2016.  DE 23.  The reason given by counsel was that at the time that he
filed his client's Motion to Dismiss, the motion was returnable before Judge Bianco, not this
Court, which requires that legal arguments be set forth in a Memorandum of Law.  In light of the
fact that the Affidavit originally submitted by counsel in connection with his opening papers, and
the memorandum of law attached to his client's Reply, set forth nearly identical arguments, the
Court will consider the latter as the operative submission.  Moreover, Plaintiffs had the
opportunity to respond to the Memorandum of Law in their surreply, which the Court, for this
reason, will consider despite the fact that surreplies are not permitted.

*Id*. However, in light of the fact that Plaintiffs filed an Amended Complaint within 21 days after service of that motion, the Court deemed the initial motion to dismiss moot. 1/17/2017 Electronic Order.

## III.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the pleading as true and draw all reasonable inferences in favor of the non-movant. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (quoting *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013); *Camlin Ltd. v. CMB Additives LLC*, No. 07-CV-4364, 2012 WL 5928443, at *1 (E.D.N.Y. Nov. 19, 2012). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955, 1959 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*; *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09-CV-8285, 2010 WL 3910590, at *4 (S.D.N.Y. Sept. 29, 2010) (quoting *Iqbal*, 129 S. Ct.

11

at 1949) ("A complaint is inadequately pled 'if it tenders naked assertions' devoid of 'further factual enhancement.'").  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

"When considering motions to dismiss a *pro se* complaint, ... 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].' " *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000)), *superseded by statute on other grounds* by 42 U.S.C. § 12102(3)(A).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)) (citing *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009)).

In resolving a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court generally "must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the complaint." *Soller v. Boudreux*, No. 12-CV-0167, 2015 WL 500492, at *6 (E.D.N.Y. Feb. 3, 2015) (quoting

*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002));  (citing *In re Thelen, LLP*, 736 F.3d 213, 218 (2d Cir. 2013));  accord *Lawrence v. Sharkey*, No. 13-CV-1743, 2015 WL 2213274, at *3 (E.D.N.Y. May 8, 2015).  However, Rule 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

As will become clearer below, in recommending to Judge Bianco that the Defendants' motions be granted in part, the Court need not consider any information which falls outside of the parties' pleadings.  The Court therefore finds that conversion to a motion for summary judgment is not necessary here.  *See Environmental Servs., Inc*. v. Recycle Green Servs., Inc., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (quoting *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citations omitted)) ("'Federal courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings" offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment.'").  The Court will treat the motions to dismiss brought by Defendant Peterson and the Village Defendants as motions to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    DISCUSSION

### A.    The Corporate Defendants

As a preliminary matter, the Court notes that two of the Plaintiffs in this case, WKMF, Inc. and Main 217 Street, LLC, are corporate entities and, according to the docket, are not represented by counsel.  It is well established that corporations "may litigate only through a duly

licensed attorney" and not *pro se*. *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (collecting cases); *see generally Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (Partnerships, corporations and limited liability companies, including sole member limited liability companies, must be represented by counsel.); *see also Demopoulos v. Sweet Clover Farms*, 15-CV-6148, 2016 WL 8711717, at *6 (E.D.N.Y. Sept. 1, 2016), report and recommendation adopted by 2016 WL 8711136 (E.D.N.Y. Sept. 30, 2016); *Holzer v. Barnard*, No. 15-CV-6277, 2016 WL 4046767, at *5 (E.D.N.Y. July 27, 2016); *Omega Consulting v. Farrington Mfg. Co.*, 604 F. Supp. 2d 684, 684 (S.D.N.Y. 2009) (citing 28 U.S.C. § 1654; *Lattanzio*, 481 F.3d at 139-40) (dismissing the case *sua sponte* on the grounds that the corporate plaintiff "may not appear *pro se* but rather must be represented by counsel.").

Since the corporate Plaintiffs in this case are not represented by a duly licensed attorney, the Court recommends that the corporate Plaintiffs be granted leave to retain counsel within 30 days. If they fail to secure legal representation within 30 days, then the Court recommends that all claims asserted on their behalf be dismissed.

The Court will now proceed to the merits of Defendants' motions as they pertain to claims asserted on behalf of the individual Defendants.

**B.    *Res Judicata***

Defendants argue that Plaintiffs' Amended Complaint should be dismissed, in part, on *res judicata* grounds since the issues raised in the instant action have already been fully litigated and dismissed in an action Plaintiffs commenced against the Defendants in the Supreme Court of the State of New York, County of Nassau, in 2011. *See Sharp v. The Incorporated Village of Farmingdale*, No. 11-010838 (Sup. Ct. 2011), annexed as Exhibit 1 to Defendant Village of Farmingdale's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Village Defs.' Mem.'") [DE 18].

14

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)); *see Michaelesco v. Estate of Richard*, 355 F. App'x 572, 573 (2d Cir. 2009) (citing *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)) ("Res judicata bars an action when a prior action involving the same parties or those in privity with them was adjudicated on the merits and the claims asserted in the subsequent action were, or could have been, raised in the prior action.").  "A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Wilson v. Ltd. Brands*, No. 08-3431, 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04-7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 372–73 (S.D.N.Y.1999), *aff'd*, 207 F.3d 2015 (2d Cir. 2000); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

"To prove the affirmative defense [of *res judicata*] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (alteration in original) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)) (internal quotation marks omitted).  The doctrine applies in cases involving *pro se* litigants. *Manko v. Steinhardt*, No. 12-1472, 2012 WL 1372277, at *2

(E.D.N.Y. 2012) (citing *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 426 (S.D.N.Y. 2008); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir. 2002)).

"Federal courts must give a state court decision the same preclusive effect that it would receive in state court." *Falardo v. N.Y. City Police Dep't*, 566 F. Supp. 2d 283, 285 (S.D.N.Y. 2008) (citing *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir. 1996); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994)); *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S. Ct. 1883, 1898, 72 L. Ed. 2d 262 (1982) (quoting *Allen*, 449 U.S. at 96) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). The Court therefore turns to New York law in determining the "'preclusive effect of a New York judgment in a subsequent federal action.'" *Ponterio v. Kaye*, No. 06-6289, 2007 WL 141053, at *6 (S.D.N.Y. Jan. 22, 2007) (quoting *Carlen v. Department of Health Servs.*, 912 F. Supp. 35, 39 (E.D.N.Y. 1996), *aff'd*, 104 F.3d 351 (2d Cir. 1996)) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)), *aff'd*, 328 Fed. App'x 671 (2d Cir. 2009). New York courts have adopted the "transactional approach" to *res judicata*, which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981)); *see TechnoMarine SA*, 758 F.3d at 499 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)); *see also Reddy v. Catone*, No. 5:13-00707, 2015 WL 11023213, at *11 (N.D.N.Y. Mar. 31, 2015) (quoting *Ponterio v. Kaye*, 06-6289, 2007 WL 141053, *6 (S.D.N.Y. Jan. 22, 2007), *aff'd*, 328 Fed. App'x 671 (2d Cir. 2009)) ("'The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law.'"), *aff'd*, 630 F. App'x 120 (2d Cir. 2015); *Manko*, 2012 WL 1372277, at *2 (dismissing an action on *res judicata*

grounds since plaintiff's claims arose out of the "same nucleus of facts" as did her claims in two prior actions which were dismissed for "lack of subject-matter jurisdiction, failure to state a claim, and the doctrines of sovereign and judicial immunity"); *Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009) (quoting *Matter of City of New York v Schmitt*, 50 A.D.3d 1032, 1033, 857 N.Y.S.2d 191 (2d Dep't 2008)) (citing *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 30, 379 N.E.2d 172 (1978)) ("'Under the doctrine of res judicata, a final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof.'").  A court will consider "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *TechnoMarine SA*, 758 F.3d at 499 (quoting *Pike*, 266 F.3d at 91) (internal quotation marks omitted).  "'The fact that causes of action may be stated separately, invoke different legal theories, or seek different relief will not permit relitigation of claims.'"  *Bayer v. City of N.Y.*, 115 A.D.3d 897, 898, 983 N.Y.S.2d 61, 63 (2d Dep't 2014) (quoting *Pondview Corp. v. Blatt,* 95 A.D.3d 980, 980, 943 N.Y.S.2d 754 (2d Dep't 2012)) (internal quotation marks omitted).

### 1.    The Prior Action in Supreme Court, Nassau County[2]

---

[2]    Court proceedings such as the ones at issue here constitute public records, which a court may consider in the context of a motion to dismiss.  *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) (quoting *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004)) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998)); *id.* (quoting *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) (finding that as the defendant's motion to dismiss on *res judicata* grounds was predicated on prior proceedings, the court would take judicial notice of public documents filed in connection with that proceeding, including any complaints filed, "'not for the truth of the matters asserted…but rather to establish the fact of such litigation and related filings'").

Plaintiffs filed the 2011 litigation against "The Incorporated Village of Farmingdale, N.Y., George Starkie, individually, George Starkie as Mayor of Farmingdale, Brian Harty, individually, Brian Harty as Village Clerk of Farmingdale, CGA Consulting, Inc., Robert Peterson, individually, Jeffrey Mongno, individually, Ronald Craig, individually, and Continental Casualty Company (AKA CAN Financial Corp.)."  Village Defs.' Mem., Ex.1 ("2011 Action").  The Court here focuses its attention on the claims from the 2011 litigation which are asserted against the named Defendants in the instant action, namely, the Incorporated Village of Farmingdale, George Starkie, Robert Peterson and Brian Harty.

In the 2011 Action,[3] Plaintiffs claimed that "[o]n or about March 2010 through October 2010, [they] were lawful applicants for building permits, plans review, application of appropriate building codes, and building construction inspection at Real Property located at 217 Main Street, Farmingdale, New York 11735."  2011 Complaint ¶ 33.  They further alleged the following as to Defendant Peterson:

> That on or about March, 2010 through October 2011, Defendant Robert Peterson, through malfeasance, misfeasance or nonfeasance, arbitrarily and capriciously, unlawfully and/or negligently delayed the issuance of building permits, delayed completion of construction at real property at 217 Main Street, Farmingdale, by demanding Plaintiffs conform premises to unnecessary, improper and dangerous misapplications and misinterpretations of the New York State Building Codes, causing loss of rent income, unwarranted architectural services, delayed construction, and loss of business income at 217 Main Street, Farmingdale, New York resulting in a loss of profit and increased costs.

*Id*. ¶ 41.  According to Plaintiffs, the Village, along with Mayor George Starkie and Brian Harty, as Village Clerk, failed to adequately supervise the individuals responsible for processing

---

[3]     The Court notes that Plaintiffs were represented by Attorney J. Ceasar Galarza at the time the 2011 action was commenced.  Attorney Galarza signed the Complaint which was verified by Plaintiff John Sharp.

Plaintiffs' applications, and failed to prevent and mitigate the damage caused to the Plaintiffs. *Id*. ¶¶ 48-52. Moreover, according to Plaintiffs, between 2006 and 2007, the Village permitted the unlawful and/or negligent construction of an "exhaust unit" attached to real property at 221 Main Street which encroached on the southern boundary of Plaintiff's property at 217 Main Street. *Id*. ¶ 53. After inspecting the encroachment, the Village took no action to rectify the situation. *Id*. ¶¶ 54, 55

Significantly, Plaintiffs' allegations as set forth in the 2011 Action cover the same timeframe as the allegations in the action now before this Court. Moreover, the substance of the claims in the 2011 Action are quite similar to the current pleadings. In the 2011 Action, Plaintiffs asserted that as to the 2010 renovation at 217 Main Street:

> No legitimate COMPELLING STATE PURPOSE is served by the [Defendants] arbitrarily and capriciously, subjecting the Plaintiffs to the unlawful and/or negligent misapplication of building codes, misinterpretation of building codes, demanding unlawful changes to building plans, failing to supervise subordinates, unlawfully administering building department procedures, misreading building plans, misinterpreting property boundaries, unlawfully authorizing or recommending unlawful construction, and causing unlawful construction delays or construction schedules, or causing unwarranted costs, misapplying the spirit and intent of the New York State Building Codes, and failure to heed real property boundaries.

*Id*. ¶ 58. Plaintiffs argued that since Defendants' wrongful conduct and interference with Plaintiffs' business resulted in monetary injury, Plaintiffs were entitled to "consequential damages," "punitive damages," costs and disbursements. *See id*., ¶¶ 66, 68, 70.

In a Short Form Order dated October 15, 2012, the Supreme Court, Nassau County, dismissed the 2011 Action on the grounds that the "discretionary decision by defendant Village and its consultants to issue a building permit does not provide a basis for the imposition of liability." *See* October 15, 2012 Short Form Order of Hon. Denise L. Sher, Acting Supreme

Court Justice, Nassau County ("October 15, 2012 Short Form Order"), annexed as Ex. 2 to Village Defs.' Mem. at 6. The court further determined that Plaintiffs failed to demonstrate the existence of any facts giving rise to a "special duty" — the existence of which would trigger the "sole exception to the immunity afforded a municipality under these circumstances." *Id*. at 7. Moreover, in regards to the individually named municipal defendants, which included Mayor Starkie and Village Clerk Harty, the court held that there was no obligation to indemnify when the defendants were acting within the scope of their employment at the time they committed the purported errors. *Id*. With respect to Peterson, a non-municipal defendant, the court reasoned that "there is well settled legal authority conferring immunity upon governmental employees and/or its consultants, [and] there is a contractual obligation for the parties to the subject agreement to hold each other harmless for all claims." *Id*. Moreover, the court explained, the non-municipal defendants were "performing their duties under the supervision of Village officials, and the municipal individual defendants, Starkie, Mayor, [and] Harty, Clerk [ ], were performing their duties within the context of their employment." *Id*. Since Plaintiffs neither pleaded that the defendants were acting outside of the scope of their employment nor offered evidence demonstrating the same, Plaintiffs' claims against the individual defendants were deemed to be "precluded" by Justice Sher. *Id*. at 7-8. The court also dismissed the allegations arising from the "exhaust unit" on the grounds that Plaintiffs failed to timely file a Notice of Claim pursuant to General Municipal Law Section 50-e (1)(a). *Id*. at 8.

Plaintiffs appealed the Supreme Court's dismissal of their 2011 Action to the Appellate Division, Second Department. *See Sharp v. Inc. Vill. of Farmingdale, N.Y.*, 129 A.D.3d 821, 822, 13 N.Y.S.3d 103, 104 (2d Dep't 2015). The Second Department affirmed the trial court's decision. *Id*. Plaintiffs then moved for leave to appeal to the New York Court of Appeals, but

that motion was denied.  *See Sharp v. Inc. Vill. of Farmingdale*, N.Y., 26 N.Y.3d 908, 40 N.E.3d 578 (N.Y. 2015).

With this background in mind, the Court turns to the question whether the doctrine of *res judicata* bars Plaintiffs from asserting any of the claims set forth in the instant litigation on the grounds that those claims were already litigated in the 2011 Action.

### 2. *Application to the Instant Action*

In their Opposition, Plaintiffs argue that Defendants' motion to dismiss on *res judicata* grounds must be denied since the 2011 Action was dismissed on absolute immunity grounds, "a standard which would be of no effect in a 42 USC 1983 determination."  Plaintiffs' Memorandum in Opposition to Rule 12(b)(6) Motions ("Pls.' Opp'n") [DE 22], at 16.  Since the 2011 Action was, in fact, dismissed on state law immunity grounds and the instant action arises under federal law, the Court considers whether these standards are distinct, and, if so, whether the distinction precludes Plaintiffs from litigating Defendants' immunity at this time.

Referencing opinions which rely on New York law, Justice Sher explained in her Short Form Order that "[w]here a municipal employee makes a discretionary decision in connection with discharging a traditional governmental function, a municipality may not be held liable for judgmental errors."  Village Defs.' Mem., Ex. 2 at 5 (citing *Rottkamp v. Young*, 21 A.D.2d 373, 249 N.Y.S.2d 330 (1964), aff'd, 15 N.Y.2d 831, 205 N.E.2d 866 (1965); *Green v. City of New York*, 181 Misc. 2d 607, 611, 694 N.Y.S.2d 881 (Civ. Ct. 1999), *aff'd,* 192 Misc. 2d 270, 746 N.Y.S.2d 740 (App. Term 2002)).  Justice Sher also stated that "[i]t has been held that the decision whether to issue a building permit is a discretionary determination and the actions of the government in such instances are immune from lawsuits."  *Id.*, at 5-6 (citing *Sposato v. Vill. of Pelham*, 275 A.D.2d 364, 365, 712 N.Y.S.2d 424 (2d Dep't 2000) (affirming the lower court's dismissal of the complaint pursuant to CPLR 3211(a)(7) "since the granting of a building permit

21

'is a discretionary determination and the actions of the government in such instances are immune from lawsuits'"); *City of New York v. 17 Vista Assoc.*, 84 N.Y.2d 299, 618 N.Y.S.2d 249 (1994) ("The decision whether to issue a permit is a discretionary determination and the actions of the government in such instances are immune from lawsuits based on such decisions[.]"); *Caronna v. Macy's East, Inc.*, 6 Misc.3d 1016(A), 800 N.Y.S.2d 343 (Sup. Ct. N.Y. County 2001) (explaining that "it has been held that '[t]he decision whether to issue a permit is a discretionary determination and the actions of the government in such instances are immune from lawsuits[ ]'") (alterations in original)).  The non-municipal defendants in the 2011 Action were accorded the same immunity since they were performing their duties under the supervision of Village officials and Plaintiffs provided no evidence demonstrating that the defendants were acting outside the scope of their employment.  Village Defs.' Mem., Ex.2, at 7.

Plaintiffs have filed the instant suit under 42 U.S.C. §§ 1983 and 1985.  Am. Compl., II ¶ 1.  Pursuant to federal law, a government official is entitled to a qualified immunity defense in the context of a Section 1983 or 1985 action when it is "'objectively reasonable' for him [or her] to believe that his [or her] actions were lawful at the time of the challenged act."  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).  "To establish qualified immunity, defendants must show either that their conduct 'did not violate "clearly established rights" of which a reasonable person would have known, or that it was "objectively reasonable" to believe that [their] acts did not violate these clearly established rights.'"  *Prue v. City of Syracuse*, 26 F.3d 14, 17 (2d Cir. 1994) (alteration in original) (quoting *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993)).

The Court finds that the relevant standards for immunity under state law and federal law as set forth above are distinct.  The focus of the qualified immunity analysis in the context of Section 1983 and 1985 cases is one based on reasonableness — a defendant must demonstrate that he or she had a reasonable basis to believe his/her conduct did not violate a clearly established statutory or constitutional right.  *See supra*.  However, in the October 15, 2012 Short Form Order, the focus of Justice Sher's inquiry and decision was whether Defendants' conduct was discretionary.  Village Defs.' Mem., Ex. 2.  Moreover, the immunity afforded Defendants in the 2011 Action was absolute in nature – "the Court is cognizant that not all discretionary actions are accorded absolute immunity." *Id*. at 6; *see Lloyd v. Town of Wheatfield*, 109 A.D.2d 1084, 487 N.Y.S.2d 235, 235 (4th Dep't 1985) ("It is established law that a municipality enjoys absolute immunity from suit in tort for damages based on the erroneous denial of a building permit.") (collecting cases), *aff'd*, 67 N.Y.2d 809, 492 N.E.2d 396 (N.Y. 1986).  Pursuant to *Monell v. Department of Social Servs. of City of N.Y*., 436 U.S. 658, 700-01 (1978), there is no absolute immunity for municipalities in actions brought under Section 1983.  Rather absolute immunity is granted only in rare circumstances since it "detracts from section 1983's broadly remedial purpose." *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)) (internal quotation marks omitted).  The "presumption" in Section 1983 actions is "that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id*. (quoting *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)) (internal quotation marks omitted).

In light of the distinctions between the scope of immunity afforded the municipal defendants in the 2011 Action and the immunity available in Section 1983 and 1985 cases, the

Court is not prepared, at this juncture, to preclude Plaintiffs from litigating claims against the Defendants on the grounds of *res judicata* at this time.    However, *res judicata* is only one of the grounds upon which Defendants request that the action be dismissed.  Defendants further argue that Plaintiffs' claims are time-barred, and the Court now turns its analysis to that argument.

### C.    Timeliness

The attorneys for both Defendant Peterson and the Village Defendants argue that Plaintiffs' claims are time-barred since the statute of limitations applicable to cases arising under Sections 1983 and 1985 expired before Plaintiffs here filed suit.  *See* Robert Peterson's Memorandum of Law in Support of Motion to Dismiss ("Peterson Mem.") [DE 23-1] annexed as Ex. 1 to Robert Peterson's Reply Memorandum of Law ("Reply Mem.") [DE 23] at 10-11; Village Defendants' Mem., at 9-10.  In their Opposition, Plaintiffs respond with references to the continuing violation doctrine and argue that the "continuing limitation on occupancy load led to weekly losses in gross revenue through July 2013 and harm to the interest in and reputation of the facility."  Pls.' Opp'n, at 4-8.

As the name suggests, a statute of limitations limits the time during which a plaintiff may commence a suit.  "Because there is no federal statute of limitations governing actions brought pursuant to Section 1983 actions, courts apply the forum state's general personal injury statute of limitations."  *Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013) (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994)); *Gregory v. Incorporated Village of Centre Island*, No. 14-2889, 2015 WL 5093623, at *4 (E.D.N.Y. Aug. 28, 2015) (citing  N.Y. C.P.L.R. § 214(2)).  Under New York law, the limitations period for a general personal injury action is three years.  *Ruane*, 923 F. Supp. 2d at 458 (quoting *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y.1993), *aff'd*, 14 F.3d 592 (2d Cir. 1993); *see Murphy v. Lynn*, 53 F.3d 547, 549 (2d Cir.1995) (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

The Plaintiffs originally commenced this action on June 9, 2016, against only the Incorporated Village of Farmingdale. DE 1. As noted previously, Plaintiffs filed an Amended Complaint on August 5, 2016 adding the individual Defendants Starkie, Peterson and Harty. DE 9. Barring any tolling of the statute of limitations, Plaintiffs can only recover against Defendant Peterson and the Village Defendants for claims arising on or after August 5, 2013. Likewise, the Incorporated Village of Farmingdale can only be held responsible for claims arising on or after June 9, 2016. Therefore, all allegations arising from the purported frustration of Plaintiffs' efforts to obtain a building permit and certificate of occupancy are time-barred since they occurred in 2010. Moreover, any FOIL claims against the Village and the individual Village Defendants arising from alleged conduct which took place on or before June 9, 2013, or August 5, 2013, respectively, are also time-barred.

Plaintiffs also reference a "proposed outdoor dining ordinance possibly restricting the use of outside areas of commercial properties on Main Street." Am. Compl. ¶ 172. The prospective ordinance was apparently the subject of a public hearing which took place on April 4, 2011. *Id.* At that hearing, Plaintiff John Sharp is alleged to have asked Mayor Starkie how he could go about obtaining "just compensation for the taking of part of the use of [his] property." *Id.* ¶ 173. Sharp was informed that he would have to retain counsel, a response he found unsatisfactory. *Id.*, ¶¶ 175-77. Plaintiffs fail to allege the subject of the ordinance, how it was expected to adversely affect Plaintiffs' rights and when, if ever, the ordinance took effect. The absence of detail with respect to this "proposed ordinance" makes it very difficult for the Court to discern the nature of Plaintiffs' claim. However, regardless of this deficiency, any allegations set forth in the Amended Complaint arising from the "proposed ordinance" are time-barred.

In an effort to escape the effect of the statute of limitations, Plaintiffs reference the continuing violation doctrine.  Generally, a statute of limitations accrues "when the plaintiff knows or has reason to know of the *injury* which is the basis of his action."  *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980) (emphasis added) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977)); *Heins v. Potter*, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003) ("The law of accrual is concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action.").  "The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)).  Under the doctrine, "[w]hen a plaintiff experiences a 'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'"  *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 556 (D. Conn. 2008) (alteration in original) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703-4 (2d Cir.1994), *abrogated in part on other grounds*, *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), superseded in non-relevant part by statute, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5)).

"As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Kennedy-Bifulco v. Town of Huntington*, No. 08-1612, 2010 WL 6052343, at *7 (E.D.N.Y. Oct. 29, 2010) (quoting *Kubicek v. Westchester County*, No. 08–CV–372, 2009 U.S. Dist. LEXIS 117061, at *19 (S.D.N.Y. Oct. 8, 2009)) (internal quotation marks omitted) (citing *Bernstein v. Mony Group, Inc*., 228 F. Supp. 2d 415, 418 (S.D.N.Y.2002), *report and recommendation adopted*, No. 08-1612, 2011 WL 883697 (E.D.N.Y. Mar. 10, 2011).  Such

26

"compelling circumstances" have been deemed to include situations "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is a 'express, openly espoused policy [that is] alleged to be discriminatory'; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." *See Remigio v. Kelly*, No. 04-1877, 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005) (quoting *Yip v. Bd. of Trustees of State Univ. of N.Y.*, No. 03-00959C, 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004), *aff'd*, 150 F. App'x 21 (2d Cir. 2005)) (internal quotation marks omitted).

In contrast, the doctrine does not apply to "discrete acts" that make up a "serial violation[]," *Gonzalez*, 802 F.3d at 220 (alteration in original) (quoting *Morgan*, 536 U.S. at 114–15, 122 S.Ct. 2061) (internal quotation marks omitted), "even if those violations have long lasting-effects." *Gregory*, 2015 WL 5093623, at *5 (quoting *J.S. v. Killian,* No. 11-103, 2015 WL 4475358 (S.D.N.Y. July 22, 2015), on reconsideration, sub nom. *J.S. v. Swaha*, No. 11 CIV. 103 (NRB), 2015 WL 10786859 (S.D.N.Y. Sept. 11, 2015)).

In support of Plaintiffs' position that their claims are rendered timely by virtue of the continuing violation doctrine, Plaintiffs cite *Sherman v. Town of Chester*, 752 F.3d 554, 557 (2d Cir. 2014). Pls.' Opp'n at 4. The plaintiff in *Sherman* sought the defendant Town's approval of his plan for the development of a subdivision. *Id.*, at 557. The town continuously enacted new zoning ordinances that required the plaintiff to make various changes to his plan on several separate occasions. *Id.* The town also "announced a moratorium on development, replaced its officials, and required Sherman to resubmit studies that he had already completed." Plaintiff was further forced to pay significant fees to the town. *Id.* In determining that these allegations invoked the continuing violation doctrine, the court reasoned that "Sherman's claim is based on

an unusual series of regulations and tactical maneuvers that constitutes a taking when considered together, even though no single component is unconstitutional when considered in isolation.  As in the context of the cases described above, it cannot be said that Sherman's property was taken on any particular day."  *Id*.

Unlike *Sherman*, the instant case involves a series of discrete acts that are, in and of themselves, actionable — Plaintiffs' approach to presenting their allegations does not convince the Court otherwise.  Defendants' purported rejection of Plaintiffs' building application, the issuance of a defective certificate of occupancy, and the failure to timely and fully reply to FOIL requests constitute separate, actionable claims.  Such a determination is not without precedent.  For example, the court in *Gregory v. Incorporated Village of Centre Island*, held that the plaintiff had not invoked the continuing violation doctrine since each act which frustrated the plaintiff's ability to obtain zoning variances and a building permit constituted separate claims.  No. 14-CV-2889, 2015 WL 5093623, at *5 (E.D.N.Y. Aug. 28, 2015).  Those acts included repeated denials of the plaintiff's applications over several years.  *Id*. at *5.  Moreover, in *Amid v. Vill. of Old Brookville*, No. CV 11-3800, 2013 WL 527772, at *2, 5 (E.D.N.Y. Feb. 7, 2013), the court declined to apply the continuing violation doctrine to allegations that the defendant personally harassed and unduly delayed the plaintiff's efforts to obtain approval of her building plans over the course of two years.  *See also Kennedy-Bifulco v. Town of Huntington*, No. 08-1612, 2010 WL 6052343, at *8 (E.D.N.Y. Oct. 29, 2010), *report and recommendation adopted*, No. 08-CV-1612, 2011 WL 883697 (E.D.N.Y. Mar. 10, 2011).

In an attempt to support their position, Plaintiffs explain that the effects of the Defendants' purported wrongful conduct were felt by Plaintiffs' business through 2013.  Pls.' Opp'n at 8.  However, as the Court has already established, "a continuing violation cannot be

established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)); *S.W. ex rel. Marquis-Abrams v. City of N.*Y., 46 F. Supp. 3d 176, 191 (E.D.N.Y. 2014) ("[T]he continuing violation doctrine 'may only be predicated on continuing unlawful acts [by the tortfeasor] and not on the continuing effects of earlier unlawful conduct.'") (alterations in original) (quoting *Selkirk v. State*, 249 A.D.2d 818, 819, 671 N.Y.S.2d 824, 825 (3d Dep't 1998)).

Even if the continuing violation doctrine did apply to this case, it would not encompass Plaintiffs' FOIL allegations, which are the only allegations that could render Plaintiffs' claims timely. Plaintiffs' FOIL allegations, however, cannot form the basis of a due process claim. *See generally Blount v. Brown*, No. 10-01548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010). In the context of such a claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Id.* (alteration in original) (quoting *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)). Courts in the Second Circuit have held that "'because FOIL documents need only be produced after a request and investigation by the state entity,'" *id.* (quoting N.Y. Pub. Off. Law §§ 84–89), a plaintiff has nothing more than "'a mere expectation'" in those documents. *Id.* (quoting *Simpson v. Town of Southampton*, No. 6-6743, 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007)). "Thus, without the property interest in the documents required for due process claims, the defendants' failure to provide the requested documents does not amount to a constitutional violation." *Id.* (citing *Simpson*, 2007 WL 1755749, at *4).

Moreover, even assuming for the sake of argument that Plaintiffs had a property interest in the FOIL documents they sought, it is well established that "[t]he appropriate vehicle for

challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y. C.P.L.R. Article 78 upon exhaustion of administrative remedies." *Schuloff v. Fields*, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997) (citing *Greenberg v. Bd. of Educ. of the City of New York*, 125 F.R.D. 361, 362 (E.D.N.Y.1989)); *Sonds v. Cuomo*, No. 11–0895, 2012 WL 952540, at *3 (N.D.N.Y. Feb. 3, 2012) (citing N.Y. Pub. Off. Law § 89(4)(b); *Schuloff*, 950 F. Supp. at 67–68), adopted by 2012 WL 952416 (N.D.N.Y. Mar. 20, 2012)); *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 616 (E.D.N.Y. 2011) (citing *McDarby v. Dinkins*, 907 F.2d 1334, 1337–38 (2d Cir. 1990)); *Simpson*, 2007 WL 1755749, at *8 (citing *Murphy v. N.Y.S. Educ. Dep't of Prof. Discipline*, 148 A.D. 2d 160, 543 N.Y.S.2d 70, 73-74 (N.Y. App. Div. 1989); *Schuloff*, 950 F. Supp. at 67; *In re Shelton*, No. 06 Civ. 6132, 2006 WL 3463425, at *2 (E.D.N.Y. Nov. 30, 2006)). Here, Plaintiffs fail to demonstrate that they utilized the appropriate mechanism under New York law to seek redress for violations of FOIL. Plaintiff's due process claims in this regard are therefore not properly before this Court. "Furthermore, to the extent that plaintiff seeks money damages for violations of his purported rights under FOIL, such damages are unavailable under FOIL." *Simpson*, 2007 WL 1755749, at *9 (collecting cases).

Since Plaintiffs' constitutional due process claims fail, the Court has considered whether Plaintiffs' FOIL allegations form the basis of an equal protection claim under the 14th Amendment. In this regard, the *pro se* Plaintiffs do not allege, with respect to any of their claims, that they were targeted due to their membership in a particular class of persons. The Court will therefore consider whether Plaintiffs have pleaded discrimination based on a "class of one." To state such a claim, a plaintiff must establish the following: "'(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree

30

that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted)).  Plaintiffs "do[ ] not identify any such similarly-situated person or specify the instance in which that person made a request similar to [theirs]." *Ferrara v. Superintendent*, *N.Y. State Police*, 26 F. Supp. 2d 410, 415 (N.D.N.Y. 1998). Plaintiffs' FOIL allegations do not set forth sufficient support for an Equal Protection claim.

In light of the fact that Plaintiffs make vague references to the First Amendment, the Court has also considered whether their FOIL allegations could form the basis of a First Amendment claim.  However, it is well established that a failure to timely and fully reply to FOIL requests does not constitute a violation of a plaintiff's First Amendment rights.  *See Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 12- 6054, 2013 WL 4719090, at *4 (E.D.N.Y. Sept. 3, 2013) (citing *Schuloff*, 950 F. Supp. at 68; *Simpson*, 2007 WL 1755749, at *4).

Plaintiffs fail to set forth a timely claim under Section 1983 and Section 1985; consequently, they also fail to set forth a claim for conspiracy under Section 1983 and Section 1985. *Gregory*, 2015 WL 5093623, at *15 (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such a right."); *Amid*, 2013 WL 527772, at *5 (citing *Fishman v. The County of Nassau*, No. 10-3231, 2011 WL 391973, at *8 (E.D.N.Y. 2011)) ("Importantly, in the absence of a valid claim stated pursuant to Section 1983, there can be no claim pursuant to Section 1985")).  Even if the failure of a Section 1983 claim did not have the aforementioned effect, Plaintiffs would still fail to set forth a Section 1985 claim.  The only subdivision of

31

Section 1985 under which Plaintiffs' claim could arise is subsection (3).  *See* 42 U.S.C. §1985.

Pursuant to Section 1985(3), "which prohibits conspiracies to deprive a person 'of the equal

protection of the laws, or of equal privileges and immunities under the laws,' a 'plaintiff must

allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

the conspirators' action.'"  *Pollack v. Nash*, 58 F. Supp. 2d 294, 305 (S.D.N.Y. 1999) (quoting

*Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994)) (internal quotation marks

omitted) (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999)); *Mangino v. Inc. Vill. of

Patchogue*, 739 F. Supp. 2d 205, 258 (E.D.N.Y. 2010) (citing *Lucas v. N.Y. City*, 842 F. Supp.

101, 104 (S.D.N.Y.1994)), reversed on reconsideration in non-relevant part, 814 F. Supp. 2d 242

(E.D.N.Y. 2011).  Since the Amended Complaint is devoid of any "racial" or "otherwise class-

based" animus, Plaintiffs fail to set forth a claim under Section 1985.

   With no actionable timely claim, Plaintiffs' time-barred claims cannot be rendered timely

through invocation of the continuing violation doctrine.  Since the continuing violation doctrine

cannot not save Plaintiffs' claims, the Court has also considered whether equitable tolling is

warranted in these circumstances.  Equitable tolling delays the running of a statute of limitations

when the untimeliness of a plaintiff's suit is attributable to factors outside of the plaintiff's

control.  *See Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) (quoting *Veltri v. Bldg. Serv.

32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)); *see also Johnson v. Nyack Hosp*., 86

F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A*., 901 F.2d

258, 264 (2d Cir. 1990)).  Equitable tolling is an "'extraordinary measure that applies only when

[a] plaintiff is prevented from filing despite exercising that level of diligence which could

reasonably be expected in the circumstances.'"  *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445

(S.D.N.Y. 2012) (quoting *Veltri*, 393 F.3d at 322) (collecting cases).  It is an "extraordinary

32

remedy to be used only sparingly." *Upadhyay*, 2012 WL 3100601, at *1 (citing *Lanzetta v. Florio's Enters*., Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011)).

"To invoke the doctrine of equitable tolling and overcome defendants' assertion that the claims are time-barred, plaintiff must plead, with the particularity required by Federal Rule of Civil Procedure 9(b), the following: '(1) wrongful concealment by defendants, (2) which prevented plaintiff['s] discovery of the claim, and (3) due diligence by plaintiff[ ] in pursuing discovery of the claim.'" *Donoghue v. Am. Skiing Co*., 155 F. Supp. 2d 70, 74 (S.D.N.Y. 2001) (alteration in original) (citing *Kolbeck v. LIT America, Inc*., 923 F. Supp. 557, 565 (S.D.N.Y.1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998)) (emphasis added). "[G]eneralized" or "conclusory allegations" will not satisfy Rule 9(b)'s heightened pleading standard. *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 399 (S.D.N.Y. 2015) (quoting *De Sole v. Knoedler Gallery, LLC*, 974 F.Supp.2d 274, 318–19 (S.D.N.Y. 2015)) (internal quotation marks omitted).

Although Plaintiffs have not explicitly argued that they are entitled to equitable tolling, given their *pro se* status, the Court considers, *sua sponte*, whether certain allegations, when taken together, should invoke equitable tolling. Throughout the Amended Complaint, Plaintiffs refer to the Village's alleged "pattern of excessive delays" in responding to their FOIL requests — a pattern that began in 2011 and continued through to 2013. Am. Compl. ¶¶ 164-66. Plaintiffs claim that these delays had the effect of "crippling the only investigative tool available to plaintiffs." *Id*. ¶ 169. More specifically, Plaintiffs aver that John Sharp "submitted a FOIL request on October 20, November 1, December 13, and again on January 13, 2011 seeking a copy of Peterson's (CGA's) liability policy." *Id*. ¶ 164. According to Plaintiffs, in response to their request, they received a one page document from the Village on January 20, 2011, 75 days late. *Id*. Plaintiffs further maintain "[t]hat on February 16, on March 20, and on March 28,

2012, plaintiffs submitted a FOIL request to defendant Farmingdale Village for attendance records for Peterson." *Id*. According to Plaintiffs, two months after they submitted the request, they received a response from the Village indicating that they did not have any such records. *Id*. ¶ 180. It is unclear what these "attendance records" pertain to or why Plaintiffs requested them.

Plaintiffs represent that they submitted a further FOIL request on November 19, 2012 seeking "copies of local laws, ordinances, or other appropriate regulations, that are required to be promulgated under NYS NYCRR TITLE 19, Section 103.2 (a) and a list of persons, offices, departments, agencies authorized and responsible for administration and enforcement of the Uniform Code, as per Section 1203.2(f). From April 2009 forward." *Id*. ¶ 187. Within two days of submitting this request, the Village acknowledged receipt of the same and indicated it would more fully respond within 20 days. *Id*. ¶ 188. Plaintiffs allege that the Village eventually responded that "there was no local law, or anything else promulgated under NYCRR Title 19, Section 103.2(a)." *Id*. ¶ 190. The specific date of the response is not provided. *Id*. Plaintiffs also state that on June 7, 2013, they submitted a FOIL request seeking copies of the notes taken by "Trustee Parisi" during a July 22, 2010 meeting between Plaintiff John Sharp and his attorney, Defendant Peterson, Defendant Harty, Village Attorney DeBellis, and Village Trustee Cheryl Parisi. *Id*., ¶¶ 121-129. The Amended Complaint asserts that the Village responded — some 47 days late — that the notes had been discarded. *Id*., ¶ 203. Plaintiffs argue that the notes "would have been invaluable towards plaintiff's investigation of improper conduct of Peterson and Clerk Harty." *Id*. ¶ 205.

The above allegations do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b). In connection with Plaintiffs' FOIL allegations, which are scattered across the 55-page Amended Complaint, Plaintiffs do not allege that Defendants intentionally delayed the issuance of their

responses or that they deliberately concealed information.  *See Lusker v. Ohrenstein*, 995 F. Supp. 388, 397 (S.D.N.Y. 1998) (plaintiffs alleged that they did not have evidence of their claims until they received "long-delayed responses" to their FOIL requests and because they were denied access to certain buildings files; the court determined that these allegations were "insufficient to establish any basis for equitable tolling").  It is not until Plaintiffs set forth their "Claims for Relief" that they assert the allegation of an "expressly design[ed] scheme(s) to thwart the requirement for timely access (5 days)."  Am. Compl., IV., ¶ 276.

Assuming, for the sake of argument, that Plaintiffs have pleaded fraudulent concealment in accordance with Fed. R. Civ. P. 9(b), the Complaint does not set forth how that concealment prevented Plaintiffs from discovering their claims.  Many of the FOIL requests which Plaintiffs allege were submitted to the Village do not have a direct bearing on the critical elements of their claims.  Moreover, it is only in the context of Plaintiff's June 7, 2013 request for the Village Trustee's notes that Defendants contend the information "would have been invaluable" to their investigation.  However, Plaintiffs do not state why those notes were so critical, especially in light of the fact that Plaintiff John Sharp was present in that very meeting and thus privy to the conversations which took place.  *See id*. ¶106.

Moreover, it was not from the FOIL requests that Plaintiffs received more concrete evidence that they purportedly had been the victim of discrimination.  During a conversation with another business owner in July 2013, Plaintiffs claim they discovered that the other business owner did not have to obtain a building permit while Plaintiffs were required to do so prior to renovating their restaurant/bar.  *Id*. ¶¶ 214-223.  Plaintiffs further discovered in August 2013, that a "Spanish Bar/Restaurant," also located on Main Street, was "targeted by Mayor Starkie." *Id*. ¶ 224.  According to the Amended Complaint, it was the latter discovery which prompted

Plaintiffs to conduct "a second group review of all building permit files acquired under a FOIL request(s) to Farmingdale Village." *Id*. ¶ 227.  Plaintiffs do not allege when they requested and received copies of these files, or whether the Village delayed in furnishing them.

According to the Amended Complaint, Plaintiffs knew as early as March 2010 that Defendant Peterson's directives were contrary to prevailing law, *see e.g*., ¶¶ 33, 35, 100, and it was not long before Plaintiffs notified Mayor Starkie "that there was no lawful, or rational reason" for Defendant Peterson's conduct. *Id*. ¶ 50.  Moreover, during the July 22, 2010 meeting referenced above, Plaintiff John Sharp asked Defendants why other restaurants on Main Street were not subjected to the same requirements regarding signage as his business was. *Id*. ¶¶ 121-129.  The Court takes note of the following colloquy contained in the Amended Complaint:

> 125.    That Plaintiff M. Sharp asked Peterson and DeBellis, "where are all of the signs (designating main entrance) at the other restaurants on Main Street?"

> 126.    That Peterson responded, "the other restaurants were all done before I was here in Farmingdale."

> 127.    Plaintiff M. Sharp responded, "no, the two new Pizza Parlors were renovated and opened in April and May of 2010, when you (Peterson) were here, and they have no signs. There are no signs on any of the restaurants on Main Street".

Am. Compl. ¶¶ 125-127.  The timing of this conversation (i.e., April and May 2010) raises the question whether Plaintiffs diligently pursued their rights.  Despite Plaintiffs' longstanding belief that Defendants' directives were baseless and that Plaintiffs were being treated differently from other similarly situated persons, Plaintiffs did not commence suit for constitutional violations against the Village Defendants, and against Defendant Peterson until June 2016 and August 2016, respectively.  Consideration of whether a plaintiff is entitled to equitable tolling requires an inquiry into whether "plaintiff had enough information to commence a lawsuit," not whether

the plaintiff "was in possession of all of the information necessary to prevail on his claims."

*Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) (citing *Torre v. Columbia University*, No. 97-0981, 1998 WL 386438, at *8 (S.D.N.Y. July 10, 1998), *aff'd*, 189 F.3d 462 (2d Cir. July 22, 1999)).

Having considered the foregoing factors, the Court finds that Plaintiffs are not eligible to invoke the doctrine of equitable tolling. As a result, nothing changes the Court's finding that Plaintiffs' claims are time-barred.

## V.    STATE LAW CLAIMS

To the extent Plaintiffs allege state law claims, the Court recommends that those, too, be dismissed. Under 28 U.S.C. § 1367, which governs a federal court's exercise of supplemental jurisdiction, "[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors [of judicial economy, convenience, fairness, and comity] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see Tops Marks, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them *without* prejudice.") (emphasis in original). Here, the Court has recommended to Judge Bianco that Plaintiffs' Sections 1983 and 1985 claims be dismissed. "No exceptional circumstances exist in this case for the Court to decide state law claims, and interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain these matters of state law in this case." *Nealy v. Berger and Groder*, No. 08-1322,

2009 WL 704804, at *10 (E.D.N.Y. March 16, 2009); *see, e.g.*, *Nelson v. Brown*, No. 13-3446, 2014 WL 4470798, at *5 (E.D.N.Y. Sept. 10, 2014) (declining to exercise supplemental jurisdiction over state law legal malpractice claim where federal claims were dismissed under Rule 12(b)(6)). Accordingly, the Court recommends to Judge Bianco that he decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## VI.  LEAVE TO REPLEAD

Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule requires that leave should be granted freely, it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to pro se civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them.")).

Even under this liberal standard, however, leave to amend may properly be denied for reasons such as undue delay, bad faith, futility of the amendment, and undue prejudice to the opposing party. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an

abuse of discretion to deny leave to amend."); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 463 (S.D.N.Y. 2012); *John Hancock*, 22 F.3d at 462.  Accordingly, the court may decline to provide a *pro se* plaintiff an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile."  *Shorter v. Rice*, No. 12-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.")).

Courts in the Second Circuit have held that "[l]eave to amend would be futile and thus [ ] unwarranted when the claims to be amended are barred by the statute of limitations."  *Bloom v. U.S. Gov't*, No. 02-2352, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) (citing *Jones v. Trump*, No. 96-2995, 1997 WL 277375, at *8 (S.D.N.Y. May 27, 1997), *amended on reconsideration in non-relevant part*, 971 F. Supp. 783 (S.D.N.Y. 1997), and *aff'd*, No. 97-9017, 1998 WL 1967891 (2d Cir. Sept. 21, 1998); *De la Fuente v. DCI Telecommunications, Inc.*, 206 F.R.D. 369, 387 (S.D.N.Y. 2002)); *see Bonner v. The Bank of N.Y. Mellon*, No. 15-3280, 2016 WL 1426515, at *7 (E.D.N.Y. Feb. 22, 2016) (quoting *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 393 (S.D.N.Y. 2003), *aff 'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)) ("'Any attempt to amend claims barred by the statute of limitations is futile.'"), *report and recommendation adopted sub nom.*, *Bonner v. Bank of N.Y. Mellon*, No. 15-3280, 2016 WL 1238234 (E.D.N.Y. Mar. 28, 2016); *Williams v. City Univ. of N.Y.*, No. 13-1055, 2014 WL 4207112, at *15 (E.D.N.Y. Feb. 7, 2014), *report and recommendation adopted*, No. 13-1055, 2014 WL 4207115 (E.D.N.Y. Aug. 25, 2014), *amended in non-relevant part*, No. 13-1055, 2014 WL 4384677 (E.D.N.Y. Sept. 3, 2014), *aff'd*, 633 F. App'x 541 (2d Cir. 2015), *and report*

*and recommendation adopted*, No. 13-1055, 2014 WL 4384677 (E.D.N.Y. Sept. 3, 2014), and

*aff'd*, 633 F. App'x 541 (2d Cir. 2015)).  Since this Court is recommending to Judge Bianco that

Plaintiffs' claims be dismissed on the grounds that they are time-barred, any amendment to the

Amended Complaint would be futile under prevailing Second Circuit case law.  Moreover,

Plaintiffs were given the opportunity to amend their complaint previously and they did so.  The

Court therefore respectfully recommends to Judge Bianco that Plaintiffs' Amended Complaint be

dismissed, without leave to replead.

## VII.   __OBJECTIONS__

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  See also Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record

shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to

be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the

undersigned.  Any requests for an extension of time for filing objections must be directed to

Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections.  Failure

to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v.*

*Arn*, 474 U.S. 140, 155 (1985); *see also Johnson v. Woods*, 426 F. App'x 10, 11 (2d Cir. 2011)

(citing *Cephas*, 328 F.3d at 107) ("A litigant's failure to file objections to a magistrate judge's

report and recommendation, even when that litigant is proceeding pro se, waives any challenge

to the report on appeal."); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996) (citing

*McCarthy v. Manson*, 714 F.2d 234, 237 n.2 (2d Cir. 1983)).

Counsel for the Village Defendants is directed to serve a copy of this Report and

Recommendation upon the *pro se* Plaintiffs forthwith by overnight mail and first class mail and

to file proof of such service on ECF.

**SO ORDERED**.

Dated: Central Islip, New York
      August 21, 2017

_/s/ A. Kathleen Tomlinson_
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge