FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 14 2018 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

JOHN SHARP, MORGAN SHARP, 217 MAIN
STREET, LLC, and WKMF, INC.,

    Plaintiffs,

    – against –

INCORPORATED VILLAGE OF
FARMINGDALE, GEORGE STARKIE, former
Farmingdale Village Mayor, ROBERT
PETERSON, and BRIAN HARTY, Farmingdale
Village Clerk,

    Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**
16-CV-2994 (JFB)(AKT)

JOSEPH F. BIANCO, District Judge:

Presently before the Court are defendants' motions to dismiss the claims filed by 217 Main Street, LLC and WKMF, Inc. (together, "the corporate plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants defendants' motions and dismisses the corporate plaintiffs' claims.

## I. Background

The Court assumes familiarity with the background of this case and the Court's prior Orders, including the Report and Recommendation issued by Magistrate Judge A. Kathleen Tomlinson on August 21, 2017 ("R&R," ECF No. 27) and this Court's September 29, 2017 Order adopting the R&R ("September 29 Order," ECF No. 36).

Plaintiffs John Sharp, Morgan Sharp, 217 Main Street, LLC, and WKMF, Inc. commenced this action against the Incorporated Village of Farmingdale (the "Village") on June 9, 2016, asserting causes of action for violations of their First, Fifth, and Fourteenth Amendment

rights pursuant to 42 U.S.C. §§ 1983 and 1985, as well as violations of New York, Nassau County, and Village law. (ECF No. 1.) On August 5, 2016, plaintiffs filed an amended complaint, adding Robert Peterson (former Village Building Inspector/Code Enforcement Officer), George Starkie (former Village Mayor), and Brian Harty (Village Clerk) as defendants. (ECF No. 9.) Plaintiffs filed their complaint and amended complaint *pro se*. The gravamen of plaintiffs' amended complaint is that defendants violated their constitutional rights by complicating and delaying the process for obtaining a building permit and certificate of occupancy for their bar/restaurant, the Republic Pub, and issuing a certificate of occupancy for the Republic Pub on October 28, 2010 ("the October 28 certificate of occupancy") that was below the limit permitted under the applicable regulations.[1]

On September 15, 2016, defendants moved to dismiss plaintiffs' amended complaint.[2] By Order dated October 6, 2016, the Court referred defendants' motions to dismiss to Magistrate Judge Tomlinson for a Report and Recommendation. (ECF No. 21.)

On August 21, 2017, Magistrate Judge Tomlinson issued the R&R, recommending that the Court grant defendants' motions to dismiss in part and deny defendants' motions to dismiss in part. The R&R recommended that defendants' motions to dismiss be granted as to plaintiffs John Sharp and Morgan Sharp (together, "the individual plaintiffs") because plaintiffs' federal claims were time-barred (R&R at 24-37),[3] and that defendants' motions to dismiss be denied as to the corporate plaintiffs because corporations are required to be represented by duly licensed

---

[1] Plaintiffs' amended complaint also alleges that defendants violated the New York Freedom of Information Law ("FOIL") by failing to respond to plaintiffs' FOIL requests or responding beyond the time prescribed under law.

[2] The Village, Starkie, and Harty (collectively, "the Village defendants") jointly moved to dismiss plaintiffs' amended complaint. (ECF No. 17.) Defendant Peterson filed a separate motion to dismiss. (ECF No. 15.)

[3] The R&R also recommended that the Court decline to exercise supplemental jurisdiction over any non-federal claims. (R&R at 37-38.)

2

counsel, and the corporate plaintiffs were proceeding *pro se* (*id.* at 13-14). Accordingly, the R&R's findings and recommendations would have applied to the corporate plaintiffs but for the fact that the corporate plaintiffs were not represented by duly licensed counsel. The R&R further recommended that the corporate plaintiffs be given thirty days to retain counsel, and that in the event the corporate plaintiffs failed to retain counsel, defendants' motions to dismiss be granted in their entirety. (*Id.* at 2.)

The parties thereafter submitted objections to the R&R. (*See* ECF Nos. 29, 32, 34.) In addition, on September 20, 2017, Lawrence E. Kelly, Esq. submitted letters noticing his appearance on behalf of the corporate plaintiffs. (ECF Nos. 30, 31.)

In the September 29 Order, the Court adopted the R&R's findings and recommendations that defendants' motions to dismiss be granted as to the individual plaintiffs and denied as to the corporate plaintiffs. With respect to the individual plaintiffs, after *de novo* review, the Court adopted the R&R's findings and recommendations that the Court: (1) grant defendants' motions to dismiss as to the individual plaintiffs because their federal claims were time-barred; (2) decline to exercise supplemental jurisdiction over any state law claims in the absence of viable federal claims; and (3) dismiss the individual plaintiffs' claims against all defendants without leave to replead, given that any amendment would be futile in light of the R&R's findings that plaintiffs' federal claims were time-barred.[4] With respect to the corporate plaintiffs, the Court agreed with the R&R that defendants' motions to dismiss should not be considered as to the corporate plaintiffs given that they had not been represented by counsel, and the Court denied defendants' motions to dismiss as to the corporate plaintiffs without prejudice

---

[4] The Court's September 29 Order also adopted the R&R's findings that plaintiffs' FOIL allegations could not form the basis of plaintiffs' constitutional claims and therefore did not cause plaintiffs' federal claims to be timely. (September 29 Order at 11 n.8.)

3

to renewal. In addition, in light of the fact that the corporate plaintiffs had recently retained counsel, the Court gave the corporate plaintiffs' counsel thirty days to determine whether the corporate plaintiffs wished to proceed on the claims in the amended complaint and, in the event they elected to do so, directed defendants to renew their previously submitted motions to dismiss.

The corporate plaintiffs failed to advise the Court how they wished to proceed within thirty days from the Court's September 29 Order. Accordingly, by letter dated October 31, 2017, the Village defendants requested that the Court issue a briefing schedule on their renewed motion to dismiss and asserted that "[t]he statute of limitations grounds on which the individual defendants' claims were dismissed apply with equal force to the corporate plaintiffs, who are advancing the same claims." (ECF No. 37.) That same day, defendant Peterson submitted a letter requesting that the Court dismiss the corporate plaintiffs' claims against all defendants. (ECF No. 38.)

On November 15, 2017, the Court held a telephone conference with the parties to discuss the status of the corporate plaintiffs. During the telephone conference, counsel for the corporate plaintiffs informed the Court that it wished to oppose defendants' renewed motions to dismiss. The corporate plaintiffs submitted their opposition to defendants' motions to dismiss on December 14, 2017. (ECF No. 40.) The Village defendants replied on January 8, 2018 (ECF No. 41) and defendant Peterson replied on January 9, 2018 (ECF No. 43).

## II. Standard of Review

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the amended complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In

order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57).

### III. Discussion

As discussed above, defendants' motions to dismiss were initially filed against all plaintiffs on September 15, 2016, and they were renewed as to the corporate plaintiffs following the Court's September 29 Order. Defendants argued in their motions that plaintiffs' amended complaint should be dismissed because: (1) plaintiffs' claims were barred by the doctrine of res

5

judicata; (2) plaintiffs' federal claims were barred by the applicable statute of limitations; and (3) any remaining allegations failed to state a claim. The Court's September 29 Order adopted the R&R's findings and recommendations that plaintiffs' federal claims were time-barred, and the Court dismissed the individual plaintiffs' federal claims on that basis and declined to exercise supplemental jurisdiction over any state law claims.[5] Following the Court's September 29 Order, the corporate plaintiffs submitted an opposition to defendants' motions to dismiss, arguing that their constitutional claims stemming from the October 28 certificate of occupancy are timely.

The Court concludes that the corporate plaintiffs' claims must be dismissed. For the reasons set forth in the R&R and the Court's September 29 Order, plaintiffs' federal claims are time-barred, and the corporate plaintiffs' opposition has failed to convince the Court otherwise. The Court adopts the reasoning set forth in the September 29 Order (adopting the findings and recommendations in the R&R) and limits its discussion below to the corporate plaintiffs' arguments in their opposition brief.

The corporate plaintiffs' primary argument in their opposition brief centers on defendants' alleged violation of section 1203.2(e)(2) of title 19 of the New York Compilation of Codes, Rules and Regulations ("the Uniform Code"), which states that "[n]o agreement shall be made by which building permits, certificates, orders or appearance tickets related to administration and enforcement of the Uniform Code are issued by other than public officers." According to the corporate plaintiffs, defendants violated this provision by having defendant Peterson serve as Building Inspector for the Village. The corporate plaintiffs claim that Peterson was acting as an independent contractor—not a public officer—when he served as Building

---

[5] The R&R declined to find that plaintiffs' claims were barred by the doctrine of res judicata, and the Court did not reach this issue in its September 29 Order.

6

Inspector for the Village; that, as a non-public official, Peterson was prohibited from enforcing and administering the Uniform Code; that Peterson's actions in inspecting, issuing permits for, and signing the October 28 certificate of occupancy (limiting the occupancy to 75 persons) for the Republic Pub constituted "illegal conduct pursuant to a Village pattern and practice"; and that it was not until July 2, 2013—when the recently instated Superintendent of Buildings, Stephen Fellman, issued plaintiffs a new certificate of occupancy, with an occupancy load of 97 persons—that the Village "ceased [its] pattern and policy of intentional acts which deprived the plaintiffs of property interests protected under clearly established state law." (Corp. Pls. Opp. at 8.) This argument fails for substantially the same reasons the R&R correctly recommended dismissal of the individual plaintiffs' federal claims as untimely.

In essence, the corporate plaintiffs' argument is simply another attempt to challenge defendants' actions in processing plaintiffs' building permit for the Republic Pub and the occupancy load in the October 28 certificate of occupancy, and therefore any federal claims based on such allegations are time-barred. As set forth in the R&R, the statute of limitations for Section 1983 and Section 1985 claims in New York is three years, *see Harrison v. Harlem Hosp.*, 364 F. App'x 686, 688 (2d Cir. 2010); *Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013), and the statute of limitations accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Ruane*, 923 F. Supp. 2d at 458 (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). Any Section 1983 or Section 1985 claims arising from the building permit or the October 28 certificate of occupancy therefore accrued by October 28, 2010, and would have had to have been asserted by plaintiffs by October 28, 2013, in order to be timely. Plaintiffs, however, did not file their initial complaint until June 9, 2016. Accordingly, the corporate plaintiffs' federal claims stemming

from the building permit or the October 28 certificate of occupancy are barred by the statute of limitations.

The Court also rejects any argument that the continuing violation doctrine renders the corporate plaintiffs' federal claims arising from the building permit or the October 28 certificate of occupancy timely.[6] As discussed by Judge Tomlinson in the R&R, the continuing violation doctrine "provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzales v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). Under this doctrine, "[w]here a plaintiff challenges a 'continuous practice and policy of discrimination . . ., the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)). The continuing violation doctrine, however, does not apply where, as here, the plaintiff asserts "a claim (or series of claims) arising from discrete actions, even if those actions have long-lasting effects." *Gregory v. Incorporated Village of Centre Island*, No. 14-CV-2889 (JFB)(AKT), 2015 WL 5093623, at *5 (E.D.N.Y. Aug. 28, 2015). In addition, even assuming that the continuing violation doctrine applied, the Court would still conclude that the corporate plaintiffs' claims are time-barred because the corporate plaintiffs have not alleged a non-time-barred act taken in furtherance of any alleged illegal policy. Put simply, the July 2, 2013 issuance of the 97-person certificate of occupancy is not an act taken in furtherance of any discriminatory policy. The corporate plaintiffs therefore cannot rely on the continuing violation

---

[6] The Court also recognizes that equitable tolling could apply to a time-barred Section 1983 or Section 1985 claim. *See, e.g., Barnett v. Etheridge*, No. 07-CV-1611 (JFB)(ETB), 2008 WL 795300, at *2 (E.D.N.Y. Mar. 24, 2008). However, the R&R found that equitable tolling was not warranted, and the Court adopted this finding in its September 29 Order. In addition, the corporate plaintiffs have not argued that any basis exists for equitable tolling. Accordingly, the Court concludes that no ground for such tolling exists based upon the amended complaint and the submissions to the Court.

doctrine to make their federal claims timely.[7]

Insofar as the corporate plaintiffs can be said to be challenging defendants' alleged violation of the Uniform Code (§ 1203.2(e)(2) or other provisions) *independent* of the building permit or the October 28 certificate of occupancy, any such federal claim would also fail. First, defendants' purported violation of the Uniform Code alone cannot serve as the basis of a Section 1983 claim. The law is clear that "Section 1983 provides a civil claim for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state law," *Tshaka v. Benepe*, No. 02-CV-5580(ILG), 2003 WL 21243017, at *2 (E.D.N.Y. Apr. 9, 2003) (collecting cases), and the corporate plaintiffs have failed to plausibly allege how defendants' purported failure to follow the Uniform Code by itself rises to the level of a constitutional violation. Second, any Section 1983 claim based on defendants' alleged violation of § 1203.2(e)(2) would also be time-barred. In their opposition brief, the corporate plaintiffs state that "[t]he Village of Farmingdale did not employ a sworn public official 'building inspector' or code enforcement official as that term is defined in the New York State Uniform Code . . . prior to the taking of the oath of office by Building Superintendent Fellman on July 2, 2012 at a Village Board meeting." (Corp. Pls. Opp. at 7; *see also* Am. Compl. ¶¶ 181-82.) Because any alleged "illegal conduct" would have ended by July 2, 2012, plaintiffs' claims in their amended complaint were clearly untimely.

The corporate plaintiffs' opposition brief also asserts that defendants failed to adhere to New York Department of State "rulings" regarding the application of the Uniform Code to their

---

[7] The Court notes that, in addition to finding plaintiffs' federal claims untimely, the R&R also correctly found that plaintiffs failed to set forth a claim under Section 1985 because a conspiracy claim under Section 1985(3) (the only Section 1985 subsection that could apply to plaintiffs' claims) requires that the conspiracy be "motivated by some racial or perhaps otherwise class-based, invidious discrimination animus," *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)), and plaintiffs' amended complaint is devoid of any such allegations.

9

property. In their amended complaint, plaintiffs allege that they requested and received two "Code Interpretations" from the Department of State, Division of Code Enforcement and Administration regarding their property that resolved the Uniform Code issues (including occupancy) in their favor (Am. Compl. ¶¶ 80-88, 145-48)—former plaintiff Morgan Sharp received the first Code Interpretation by email on May 10, 2010 (*id.* ¶ 86) and the second Code Interpretation by email on October 5, 2010 (*id.* ¶ 146). Plaintiffs further allege that, pursuant to New York Executive Law § 376(4), "[s]ubsequent enforcement of [the uniform] code [was to] be consistent with such written interpretations." (*See id.* ¶ 85.) In their opposition brief, the corporate plaintiffs claim that they used the "mandated New York State Department of State due process appeal processes throughout the interim period from 2010 through and until July 2, 2013 to no effect," and that they "made appeals to the New York Department of State, obtained rulings in their favor, and were left with the continuation of an intentional pattern and practice of misconduct by the respective Village defendants." (Corp. Pls. Opp. at 9.)

The corporate plaintiffs appear to be arguing that defendants' alleged failure to adhere to the Department of State's Code Interpretations is a continuing violation of their procedural due process rights.[8] The Court rejects this argument for the same reasons it rejected any theory that the individual plaintiffs were subject to a continuing violation of their procedural due process rights in the September 29 Order—namely, putting statute of limitations issues aside, the corporate plaintiffs have failed to plausibly allege a procedural due process violation.

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of *that* right, and third show that the

---

[8] To the extent the corporate plaintiffs argue that this was a violation of other constitutional rights, this argument would fail for the aforementioned reasons—any claim arising from the building permit or the October 28 certificate of occupancy would be time-barred, and any claim based solely on defendants' alleged violation of New York Executive Law § 376(4) cannot serve as the basis of a Section 1983 claim.

10

deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)); *see also Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("[T]he Constitution . . . require[s] 'an opportunity . . . granted at a meaningful time and in a meaningful manner' 'for [a] hearing appropriate to the nature of the case.'") (citations omitted)).

However, there is no procedural due process violation "when a state employee intentionally deprives an individual of property or liberty [through random, unauthorized acts by the state employee], so long as the State provides a meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).[9] In addition, it is well settled in the Second Circuit that, when "a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (per curiam) (quoting *Hellenic*, 101 F.3d at 880-81).

Here, the availability of an Article 78 proceeding provided the corporate plaintiffs with an adequate postdeprivation remedy for the alleged deprivation of their property in connection with the building permit and the October 28 certificate of occupancy. Courts in this circuit have

---

[9] The Court notes that, if the alleged procedural due process violation is based on "established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic*, 101 F.3d at 880. The Court, however, concludes that plaintiffs' claims are based on defendants' alleged random and arbitrary acts directed at plaintiffs and their property, and not an established state procedure. Aside from one conclusory allegation that defendants' "constitutional violation was pursuant to official policy and custom" (Am. Compl. ¶ 8), plaintiffs' amended complaint is based on defendants' alleged arbitrary and intentional misapplication of the Uniform Code in connection with the building permit and the October 28 certificate of occupancy for the Republic Pub. *See Hellenic*, 101 F.3d at 882 (concluding alleged procedural due process violation occurred "because of a random and arbitrary act" when plaintiff argued that "state officials acted in flagrant violation of the City Charter and [applicable rules]").

11

repeatedly found Article 78 proceedings to be an adequate postdeprivation remedy in similar situations. *See, e.g.*, *Nenninger v. Village of Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013) ("To the extent [plaintiff] argues that a failure to rule on his [zoning] application—complete or incomplete—denied him procedural due process, the claim fails in any event because [plaintiff] was free to bring an Article 78 mandamus proceeding in New York State court."); *Nardiello v. Town of Oyster Bay*, 15-CV-292, 2016 WL 1464557, at *3-4 (E.D.N.Y. Apr. 12, 2016) (dismissing procedural due process claim arising from refusal to act on and denial of building permit due to availability of Article 78 proceeding); *Gregory*, 2015 WL 5093623, at *7 (collecting cases where courts "held that the availability of review through an Article 78 petition provides constitutionally adequate process" in cases concerning zoning applications). The corporate plaintiffs' unsupported assertion that seeking a Code Interpretation from the Department of State is a "mandated due process appeal process" is therefore meritless, and any claim that defendants violated the corporate plaintiffs' procedural due process rights fails.

To the extent the corporate plaintiffs are attempting to claim that defendants' alleged failure to adhere to the Code Interpretations demonstrates that an Article 78 proceeding would have been an inadequate postdeprivation remedy, the Court disagrees. Although courts have denied motions to dismiss procedural due process claims when Article 78 proceedings were inadequate, *see, e.g.*, *Koncelik v. Town of East Hampton*, 781 F. Supp. 152, 158 (E.D.N.Y. 1991) (denying motion to dismiss procedural due process claim in zoning case because "although plaintiffs timely and successfully availed themselves of the Article 78 proceeding . . ., their plans to develop their property [we]re still being delayed"); *Acorn Ponds v. Village of North Hills*, 623 F. Supp. 688, 690-91 (E.D.N.Y. 1985) (denying motion to dismiss procedural due process claim related to zoning decision, despite fact that plaintiff was able to obtain orders in Article 78

proceeding, because such remedies were inadequate given the delay in obtaining the certificates of occupancy), this is not a situation where plaintiffs availed themselves of the Article 78 procedure and that procedure proved insufficient. Instead, plaintiffs failed to initiate an Article 78 proceeding in connection with the building permit or the October 28 certificate of occupancy. "Where, as here, Article 78 gave [plaintiffs] a meaningful opportunity to challenge the [alleged deprivation of property], [they were] not deprived of due process simply because [they] failed to avail [themselves] of the opportunity." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984).

\* \* \*

In sum, for the reasons discussed above and set forth in the Court's September 29 Order and the R&R, the Court concludes that all of the corporate plaintiffs' federal claims are time-barred and, in the alternative, with respect to the procedural due process claim, that the corporate plaintiffs have also failed to allege a plausible claim. Accordingly, the Court dismisses the corporate plaintiffs' federal claims. To the extent the corporate plaintiffs allege state law claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction.").

## IV. Conclusion

For the foregoing reasons, the Court grants defendants' motions to dismiss and dismisses the corporate plaintiffs' claims. The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

*Joseph Bianco*
JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

Dated: September 14, 2018
Central Islip, NY